UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Gayle Palombo

    v.                                    Civil No. 17-cv-284-LM
                                       Opinion No. 2018 DNH 132
Nancy A. Berryhill, Acting
Commissioner of Social Security


**O R D E R**

    Gayle Palombo seeks judicial review, pursuant to 42 U.S.C. §§ 405(g) & 1383(c)(3), of the decision of the Acting Commissioner of the Social Security Administration, denying her application for disability insurance and Supplemental Security Income benefits. Palombo moves to reverse the Acting Commissioner's decision, and the Acting Commissioner moves to affirm. Separately, Palombo moves for leave to file a response to the Acting Commissioner's surreply and requests clarification of the local rules with regard to social security disability cases. The court addresses the latter issue first, before evaluating the merits of Palombo's appeal. For the reasons discussed below, Palombo's motion for leave to file a response is denied, Palombo's motion to reverse is granted in part, and the Acting Commissioner's motion to affirm is granted in part.

I.   Motion for Leave to File Response to Surreply

On April 4, 2018, Palombo filed a reply to the Acting Commissioner's motion for an order affirming her decision. See doc. no. 20.  On April 9, 2018, the Acting Commissioner filed a surreply.  See doc. no. 21.

More than a month later, on May 14, 2018, Palombo filed a motion for leave to file a response to the Acting Commissioner's surreply.  See doc. no. 23.  In addition to requesting leave to file a response, Palombo's motion asks the court to "expressly clarify" that under Local Rule 9.1, the Acting Commissioner is prohibited from filing a surreply without first seeking leave of the court.  Id. at 2.  Palombo requests that the court either allow her to file her proposed response to the Acting Commissioner's surreply or strike the surreply.

Local Rule 9.1, which governs social security disability cases, provides: "The plaintiff may file a reply memorandum pursuant to LR 7.1(e)(1).  Neither party shall otherwise be required to file an objection to the other party's motion."[1] Local Rule 7.1(e)(3) provides: "If a reply has been filed either as of right pursuant to LR 7.1(e)(1) or by court order under LR 7.1(e)(2), a surreply may be filed within five (5) days of the

---

[1] LR 9.1 was amended on May 7, 2018, after Palombo filed her reply and the Acting Commissioner filed her surreply.  The quoted language was formerly contained in LR 9.1(e) and is now contained in LR 9.1(d).

2

date the reply was filed." In other words, once a party files a reply pursuant to Local Rule 7.1(e)(1), the other party may file a surreply within five days without seeking leave from the court.

Considering all of these provisions, the Acting Commissioner is allowed to file a surreply without requesting the court's permission, and the surreply need not be stricken. Furthermore, Palombo cites no authority that would allow her to file a response to the Acting Commissioner's surreply. Accordingly, Palombo's motion is denied.

II. Palombo's Appeal

    a. Standard of Review

In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). The court defers to the ALJ's factual findings as long as they are supported by substantial evidence. 42 U.S.C. § 405(g); see also Fischer v. Colvin, 831 F.3d 31, 34 (1st Cir. 2016). "Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

[Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010)](#).

In determining whether a claimant is disabled, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant "has the burden of production and proof at the first four steps of the process." [Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001)](#). The first three steps are (1) determining whether the claimant is engaged in substantial gainful activity; (2) determining whether she has a severe impairment; and (3) determining whether the impairment meets or equals a listed impairment. 20 C.F.R. §§ 404.1520(a)(4)(i)-(iii), 416.920(a)(4)(i)-(iii).

At the fourth step of the sequential analysis, the ALJ assesses the claimant's residual functional capacity ("RFC"), which is a determination of the most a person can do in a work setting despite her limitations caused by impairments, id. §§ 404.1545(a)(1), 416.945(a)(1), and her past relevant work, id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can perform her past relevant work, the ALJ will find that the claimant is not disabled. See id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ proceeds to Step Five, in which the ALJ has the burden of showing that jobs exist in the economy which

the claimant can do in light of the RFC assessment. See id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### b. Background[2]

This is Palombo's second application for disability insurance and Supplemental Security Income ("SSI") benefits. Palombo filed her first application in February 2012. In the first application, Palombo alleged disabilities of spurs and deterioration of spine, arthritis, tendonitis, depression, speech problems, knee issues, and obesity. The Social Security Administration denied the first application on initial review and, in December 2012, it denied the application again on reconsideration. Palombo did not further proceed with the first application.

One year later, Palombo filed the present application, seeking both disability insurance and SSI benefits. She alleged that she was disabled because of depression, anxiety, spinal stenosis of the back and neck, arthritis, and asthma. At the time of her application, Palombo was 47 years old, had a high school education, and had previously worked as a telemarketer, short order cook, waitress, and factory laborer.

During initial review, the Social Security Administration denied both her request for disability insurance benefits and

---

[2] A detailed statement of the facts can be found in the parties' Joint Statement of Material Facts (doc. no. 19).

5

her request for SSI benefits. As to the former, the agency determined that, because Palombo's alleged onset date (November 2011) was later than her date last insured (September 2011), she was not entitled to disability insurance benefits.[3]

As to SSI benefits, the agency denied Palombo's application on the ground that she is not disabled. Palombo thereafter sought a hearing before an ALJ, which was held on February 25, 2016. Palombo was represented by an attorney and testified at the hearing. Ruth Baruch, a vocational expert, also appeared and testified.

### i. Hearing & Record Evidence

For purposes of the present order, the court need only discuss the evidence relating to one of the limitations to Palombo's functional capacity: her borderline intellectual functioning. At the hearing, Palombo testified that she was enrolled in a special education program during high school. Palombo did most of her coursework in special education classes and only took a couple of regular classes. Admin. Rec. at 46.

Medical sources in the record show that Palombo's intellectual functioning is in the borderline to low-average

---

[3] "Date last insured refers to the date before which the plaintiff must prove disability in order to be eligible for disability benefits." Schupp v. Barnhart, No. 3:02CV103, 2004 WL 1660579, at *2 n.2 (D. Conn. Mar. 12, 2004) (citing applicable statutes and regulations).

range.  In 2012, Dr. Donna Gates, Ph. D, conducted a consultative examination for purposes of Palombo's first application.  Dr. Gates administered the Wechsler Adult Intelligence Scale-IV, and Palombo received a verbal comprehension score of 72, a full-scale IQ of 76, and a score of 3 in arithmetic ability.  Dr. Gates considered these test results to be an accurate reflection of Palombo's intellectual abilities, which Gates estimated to be in the borderline range.  In 2014, Dr. Edward Quinn, Ph. D, came to a similar conclusion after a consultative examination.  He opined that Palombo's intelligence "appears to be in the borderline to low average range."  Id. at 544.

In 2014, Dr. Thomas Knox, Ph. D., a non-examining agency consultant, evaluated Palombo's mental impairments for purposes of reconsideration of her present application.  Dr. Knox concluded that Palombo's intellectual abilities resulted in functional mental limitations.  For example, Dr. Knox found that, based on her borderline to low-average intelligence, Palombo had markedly limited abilities to understand, remember, and carry out detailed instructions, and was even moderately limited in her ability to understand and remember very short and simple instructions.

At the hearing, the ALJ posed hypothetical questions regarding job availability to Ruth Baruch, the vocational

expert, which were based in part on Palombo's mental limitations. Baruch testified that a person who could perform a limited range of light work—with limitations on concentration, persistence, or pace, and with the ability to understand, remember, and carry out simple tasks—could still perform a number of jobs that exist in significant numbers in the national economy. Palombo's counsel asked Baruch whether a full-scale IQ below the tenth percentile nationally would affect a person's ability to perform unskilled jobs. Baruch answered that question in the negative, stating that it is "not uncommon for people to work those kind of jobs with something below 10 percent." Id. at 55.

After the hearing, Palombo submitted a letter and attached affidavit to the ALJ. In the letter, dated March 7, 2016, Palombo's counsel states as follows:

> As you know, it is the stated policy of the agency that whenever a VE is used, the claimant has the right to review and respond to the VE evidence prior to the issuance of a decision. Enclosed please find the affidavit of David Meuse, a vocational expert. This affidavit represents my client's response to the VE evidence given in the case.

Doc. no. 9-2 at 1. In the attached affidavit, Meuse states that a person with Palombo's intellectual-testing scores—an IQ of 76, a verbal I.Q. of 72, and an arithmetic score of 3—would be in the fifth percentile in those abilities. Meuse opines that this "would be very limiting," because "[a]lmost all competitive

8

employment would require being at least above ten percent in all three of those areas." Id. at 3. He notes that "even basic jobs" like garbage collector, sandwich board carrier, and harvest worker require such skills "above the lowest ten percent or higher." Id. Meuse states that a person with those abilities would "typically require a special accommodation" or would need to learn the job "in a sheltered workshop setting rather than in competitive employment." Id. The affidavit is dated March 4, 2016.

Based on the date of the letter, it appears that Palombo's counsel submitted the affidavit less than two weeks after the hearing. But the ALJ took no action with respect to the letter: she did not assign it an exhibit number, place it into the record, or discuss it in her decision.

### ii. ALJ's Decision

The ALJ issued her decision on April 1, 2016. At step one, the ALJ found that Palombo had not engaged in substantial gainful activity since December 2013, her application date. The ALJ then found that Palombo has severe impairments of borderline intellectual functioning, right shoulder rotator cuff strain, history of right knee arthroscopic medial meniscus tear with residual degenerative changes, degenerative disc disease of the lumbar spine, morbid obesity, and "a question of asthma in a

9

smoker." Admin. Rec. at 15. At step three, the ALJ found that Palombo's impairments do not meet or equal a listed impairment.

At step four, the ALJ concluded that Palombo has the residual functional capacity to perform a limited range of light work, with one limitation being that Palombo has the ability to understand, remember, and carry out simple tasks. The ALJ determined that Palombo is unable to perform any past relevant work. At step five, the ALJ relied on Baruch's testimony to conclude that there are jobs that exist in significant numbers in the national economy that Palombo can perform. Therefore, the ALJ found that Palombo is not disabled within the meaning of the Social Security Act. The Appeals Council denied Palombo's request for review, making the ALJ's decision the Acting Commissioner's final decision.

    c. <u>Discussion</u>

Before discussing Palombo's arguments on appeal, the court addresses a preliminary issue. In her present application, Palombo seeks both disability insurance benefits and SSI benefits. The ALJ determined that, because Palombo was found to be not disabled as of the date last insured in her first application, res judicata bars Palombo from relitigating the issue in the present application. Palombo does not directly challenge the ALJ's use of res judicata. Instead, she contends only that the ALJ should have construed her present application

10

as an implied request to reopen her first application for disability insurance benefits, and she asserts that the ALJ should have granted that request.

This argument does not merit relief. The Acting Commissioner correctly notes that "the refusal to reopen a prior final decision is not judicially reviewable absent a colorable constitutional claim." Doc. no. 17-1 at 10; see Alazawy v. Colvin, No. 2:16-cv-240-JHR, 2016 WL 7441623, at *13 (D. Me. Dec. 26, 2016); Nerich v. Colvin, No. 13-cv-396-PB, 2014 WL 6453307, at *5 (D.N.H. Nov. 17, 2014). Palombo raises no constitutional claim. Consequently, even if Palombo's application could be construed as an implied request to reopen, the court has no jurisdiction to consider Palombo's argument.[4] For that reason, the ALJ's decision is affirmed with respect to Palombo's claim for disability insurance benefits.

The court next turns to Palombo's present claim for SSI benefits. Palombo asserts that the ALJ committed a number of errors in finding her not disabled. The court need only address one, however. Palombo argues that the ALJ erred by failing to address or consider the opinion of her vocational expert, David Meuse. The Acting Commissioner responds that the ALJ "properly

---

[4] Likewise, Palombo's assertion that her previous SSI claim should have been reopened fails on the same basis.

11

did not admit the evidence into the record." Doc. no. 17-1 at 9-10.

As an initial matter, the parties disagree over the legal standard that applies to their dispute.  Palombo contends that Social Security Ruling ("SSR") 96-9p gives her the right to submit such rebuttal evidence.  SSR 96-9p provides in pertinent part:

> At the hearings and appeals levels, vocational experts (VEs) are vocational professionals who provide impartial expert opinion during the hearings and appeals process either by testifying or by providing written responses to interrogatories. A VE may be used before, during, or after a hearing. <u>Whenever a VE is used, the individual has the right to review and respond to the VE evidence prior to the issuance of a decision</u>. The VE's opinion is not binding on an adjudicator, but must be weighed along with all other evidence.

SSR 96-9p, 1996 WL 374185, at *9 n.8 (July 2, 1996) (emphasis added).

By contrast, the Acting Commissioner cites 20 C.F.R. § 405.331(c) as the relevant authority.  That regulation sets forth the so-called "Five Day Rule," which requires an applicant to submit any written evidence "no later than 5 business days before the date of the scheduled hearing."[5]  Howe v. Colvin, 147

---

[5] The court references the version of the regulation that existed at the time of the ALJ's decision.  The regulation has since been modified and incorporated into other sections.  See Mathers v. Berryhill, No. 2:17-cv-62-JHR, 2018 WL 1040245, at *3 n.2 (D. Me. Feb. 23, 2018) (discussing changes).

F. Supp. 3d 5, 7 (D.R.I. 2015) (quoting 20 C.F.R. § 405.331(a)). If an applicant misses the deadline and "wish[es] to submit evidence after the hearing and before the hearing decision is issued," the ALJ will accept the evidence if the applicant makes two showings. 20 C.F.R. § 405.331(c). The applicant must first establish that "there is a reasonable possibility that the evidence, alone or when considered with the other evidence of record, would affect the outcome of [the] claim." Id. And, as is relevant here, the applicant must also show that "[s]ome other unusual, unexpected, or unavoidable circumstance beyond [the applicant's] control prevented [her] from submitting the evidence earlier." Id. § 405.331(c)(3). Importantly, however, even if these requirements are not met, the ALJ still has the discretion to consider the evidence. Id. § 405.331(a) (stating that an ALJ "may decline" to consider evidence submitted late); see also Howe, 147 F. Supp. 3d at 7.

The court need not definitively resolve which standard applies under these circumstances, because the court concludes that the case must be remanded even if § 405.331 applies. In the first place, it is unclear whether the ALJ relied upon § 405.331 to justify rejection of the affidavit. In her decision, the ALJ does not reference Meuse's affidavit or evaluate its admissibility under § 405.331. To the extent the ALJ did rely on the regulation to reject the submission of the affidavit, she

13

never explained her reasoning, which prevents the court from conducting any meaningful judicial review. That error justifies remanding the case.[6] See Howe, 147 F. Supp. 3d at 8 (concluding that ALJ erred by rejecting medical record under 20 C.F.R. § 405.331, given, inter alia, "the ALJ's complete failure to explain her rationale for rejecting the document"); see also Donnersbach v. Astrue, No. 1:10-cv-135, 2011 WL 294519, at *6-7 (N.D. Ind. Jan. 25, 2011) (remanding case where ALJ failed to "minimally articulate his rationale" for denying claimant an opportunity to question author of post-hearing medical report).

The need for explanation is particularly acute here, as Palombo presents a viable case for relief under § 405.331(c). Under the regulation, the first hurdle is that a claimant must show "there is a reasonable possibility that the evidence, alone or when considered with the other evidence of record, would affect the outcome of [the] claim." 20 C.F.R. § 405.331(c). Here, Meuse opines that "[a]lmost all competitive employment" would be unavailable to a person with Palombo's level of intellectual functioning. Doc. no. 9-2 at 3. This would appear

---

[6] Moreover, absent any explanation by the ALJ, the Acting Commissioner's argument regarding § 405.331 appears to be no more than a post hoc rationalization of what occurred below. See Castro v. Acting Comm'r, Social Sec. Admin., No. 17-cv-399-JD, 2018 WL 1509078, at *3 (D.N.H. Mar. 27, 2018) ("[T]he court cannot affirm an agency decision, including a decision of the Acting Commissioner of Social Security, based on post hoc rationalizations that were not part of the decision.").

14

to be highly probative to step five of the evaluation process, and the Acting Commissioner does not argue otherwise.

Next, the claimant must show an unusual, unexpected, or unavoidable circumstance beyond her control that prevented her from submitting the evidence earlier. 20 C.F.R. § 405.331(c)(3). By definition, rebuttal evidence of this kind could not have been submitted earlier, "since the claimant has no clue to what the vocational expert will testify until the end of the hearing." McClesky v. Astrue, 606 F.3d 351, 354 (7th Cir. 2010) (noting that "submission and consideration of post-hearing evidence are common in social security disability cases," especially affidavits used "to rebut vocational 'expert' testimony which cannot be anticipated prior to hearing"). Thus, the late submission of Meuse's affidavit could be viewed as "unavoidable" for purposes of § 405.331(c)(3).[7]

This is not to say that Palombo unequivocally satisfied the requirements of § 405.331(c), but only to point out the necessity for the ALJ to address the issue and provide sufficient reasons to justify the exclusion of the affidavit.

---

[7] The Acting Commissioner also appears to fault Palombo for failing to identify how she met the requirements of § 405.331 in her letter to the ALJ. The court does not find this argument persuasive. Even if not stated explicitly in terms of § 405.331, the materiality of the affidavit, and the justification for its late submission, are apparent from casual examination of the letter and affidavit.

Because the ALJ failed to do so, the case must be remanded for further proceedings.

Given this outcome, the court need not address Palombo's remaining claims of error. The ALJ may address those issues, if necessary, upon remand.

## CONCLUSION

For the foregoing reasons, Palombo's motion to reverse (doc. no. 9) is granted in part, and the Acting Commissioner's motion to affirm (doc. no. 17) is granted in part. The court affirms the Acting Commissioner's decision as it relates to Palombo's claim for disability insurance benefits, and otherwise vacates the decision and remands the case for further proceedings. Palombo's motion for leave to file a response (doc. no. 23) is denied. The clerk of the court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

June 25, 2018

cc: Counsel of Record